IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARGARET OKOROJI        :

v.                      :    Civil Action WMN-98-2132

EDGEMEADE AT FOCUS POINT, :
    et al.              :

**MEMORANDUM**

Before the Court are Defendants' Motion for Summary Judgment (Paper No. 33) and Plaintiff's Cross-Motion for Summary Judgment (Paper No. 36). The motions are ripe for decision. Upon a review of the motion and the applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that the Defendants' motion will be granted in part and denied in part and that Plaintiff's cross-motion will be denied.

**I.   BACKGROUND**

This action arises out of Plaintiff's employment as a night unit supervisor at the Maryland Center for Youth and Family Development, Inc. (MCYFD) from July 1, 1996, until her termination in March, 1998. MCYFD is a locked residential center which provides treatment to minors suffering from emotional and psychiatric disorders. As a unit supervisor, Plaintiff was responsible for supervising all employees who worked during her shift.

Plaintiff has filed suit against her former employer and several of its staff members. During the course of her



1

employment, Plaintiff, a Nigerian female, claims that she was discriminated against on the basis of race, national origin, and sex. She alleges that her male counterparts were paid more than she was, received more overtime hours, and were afforded more regularity in their scheduling. She claims that she was denied promotional opportunities based on her national origin and sex. Plaintiff maintains that her employer prevented her from speaking her native language, Igbo, while at work. Plaintiff filed an EEOC complaint on February 24, 1998, and claims that she was subsequently discharged in March 1998 in retaliation. Finally, Plaintiff also claims that she was denied medical leave.[1] Plaintiff's suit alleges violations of Title VII, the Equal Pay Act, and the Family and Medical Leave Act, as well as claims

---

[1] The event concerning the denial of medical leave and Plaintiff's termination is not entirely clear. On March 3, 1998, Plaintiff claims that she did not feel well and told Defendants that she could not work her night shift. Plaintiff claims that Defendants required her to work anyway. She alleges that she went to the nurse on staff at MCYFD who gave Plaintiff two Tylenol and instructed Plaintiff to see her doctor when she got off of work. Defendants conducted a routine night time check and claim to have found Plaintiff and two staff members asleep. Plaintiff denies sleeping; rather, she claims that she was very sick. Plaintiff was kept at work for two hours after her shift. Defendants deny that Plaintiff complained of any ill health or requested any medical attention. Plaintiff left work on March 4, 1998, and went to the emergency room and was later transferred to the Cardiac Unit at Laurel Regional Hospital. She was released on March 5, 1998. Defendants claim that Plaintiff was "asymptomatic," Defendants' Motion at 11, and Plaintiff claims that she had a heart attack. Plaintiff claims that Defendant Welch called Plaintiff at the hospital on March 4, 1998, and "hammered" her with questions. Complaint at ¶ 20.

under state law for wrongful discharge and intentional infliction of emotional distress.

## II. DISCUSSION

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to summary judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying the portions of the opposing party's case which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When considering the motion, the court assumes that all of the non-moving party's evidence is worthy of belief and justifiable inferences are drawn in favor of the non-moving party. Anderson, 477 U.S. at 252. If the movant demonstrates there is no genuine issue of material fact and that she is entitled to summary judgment as a matter of law, the non-moving party must, in order to withstand the motion for summary judgment, produce sufficient evidence in the form of depositions, affidavits or other documentation which demonstrates that the triable issue of fact exists for trial. Celotex, 477 U.S. at 324.

In this case, neither Plaintiff or Defendants have met their

burden of showing that there is no genuine issue of material fact.  Furthermore, both movants have wholly failed to demonstrate that they are entitled to summary judgment as a matter of law.[2]  They have incorrectly assigned to the Court their burden of proof in order to successfully obtain a summary judgment in their favor.  Plaintiff, to obtain summary judgment, must demonstrate undisputed facts which entitle her to judgment as a matter of law.  It is not the Court's responsibility to conduct Plaintiff's fact finding for her.  For example, the Court will not, as Plaintiff urges, "solicit [an] independent court medical officer or subpoena physicians who attended to Plaintiff," Plaintiff's Opposition and Cross-Motion at 9, in order to ascertain Plaintiff's medical condition on the date of her termination.  Similarly, the Court declines to accept Defendants' broad conclusory statements that Plaintiff has no claim.  Defendants, represented by counsel, are certainly aware of the burden on a summary judgment movant and, yet, have ignored well settled procedural requirements.  Simply stated, it is insufficient to make a conclusory statement and direct the Court to sift through deposition transcripts.  It behooves Defendants

---

[2] Neither movant makes any attempt to set forth the applicable law, much less to apply the law to the relevant facts. While the Court empathizes with the difficulties that a pro se party faces in conducting legal research, it is less tolerant of the complete absence of effort by <u>attorneys</u> to present and apply the controlling law.

4

to present facts and supporting arguments in order to meet their burden.

Many facts remain in dispute and have not been adequately addressed by either movant. As to many issues, neither side has presented enough factual background for the Court to have a clear understanding of the events, much less whether Defendants or Plaintiff are entitled to judgment as a matter of law.

For example, with respect to Plaintiff's claim of unequal pay, Defendants have completely ignored Plaintiff's argument that male co-workers were granted overtime more often than herself. In fact, Defendants originally cited, as evidence of Plaintiff's poor work performance, a reprimand for taking unauthorized overtime. Plaintiff claimed that she was later given this overtime compensation after her suspension. In their reply memorandum, Defendants retreat from their earlier statement, arguing that the Court should not concern itself with this matter because it was resolved through an internal grievance procedure. The Court is unable to determine whether this incident is an indicia of discrimination because it has not been provided sufficient facts to ascertain precisely what occurred and for what reason.

A comprehensive inventory of inadequate factual briefing is beyond the scope of this memorandum. The occurrences are ample; e.g., whether Plaintiff was truly in need of medical attention

when she was denied leave, found to be sleeping, and detained after work. These facts are relevant because they potentially affect the outcome of Plaintiff's retaliatory discharge, FMLA, and intentional infliction of emotional distress claims. Another ambiguous matter is when Plaintiff's EEOC complaint was filed and when Defendants became aware of it. Whether Defendants' prevention of the speaking of Igbo was indicative of discrimination is also a matter hardly addressed by either movant. Based on the inadequately briefed facts and arguments presented by the parties, the Court cannot determine whether Plaintiff was discriminated against or whether a mere personality conflict was at issue. For these reasons, the Court must deny Plaintiff's motion and most aspects of the Defendants' motion, even though the possibility of Plaintiff ultimately prevailing appears remote.

Despite the inadequate briefing, however, there are several aspects of Defendants' motion which should be granted. The Court will grant Defendants' motion for summary judgment on Plaintiff's wrongful discharge claim. The Maryland Court of Appeals has held that an at-will employee can recover for wrongful discharge only upon a showing that the discharge violated a "clear mandate of public policy." Adler v. Am. Standard Corp., 291 Md. 31, 43 (1981). In Makovi v. Sherwin-Williams Co., 316 Md. 603 (1989), that same court further limited the permissive scope of wrongful

discharge claims in Maryland by stating, "[a]busive discharge is inherently limited to remedying only those discharges in violation of a clear mandate of public policy <u>which otherwise would not be vindicated by a civil remedy</u>." 316 Md. at 605. In the present case, Title VII provides a statutory remedy for retaliatory discharge and Plaintiff's state law claim of wrongful discharge is therefore inappropriate. See <u>Hart v. Harbor Court Assocs.</u>, 46 F.Supp.2d 441 (D. Md. 1999).

In addition, the Court will also grant Defendants' motion as to Plaintiff's claim for intentional infliction of emotional distress. In order to establish an action for intentional infliction of emotional distress, four elements must be satisfied:

> "(1) The conduct must be intentional or reckless;
> (2) The conduct must be extreme and outrageous;
> (3) There must be a causal connection between the wrongful conduct and the emotional distress;
> (4) The emotional distress must be severe."

<u>Batson v. Shiflett</u>, 325 Md. 684, 734 (1992) (quoting <u>Harris v. Jones</u>, 281 Md. 560, 566 (1977)). Although heightened pleading is not necessarily required, Maryland courts, because of the limited applicability of the tort, have examined underlying allegations to ensure that they provide sufficient particularity in order to establish the elements rather than merely presenting "some of the proper adjectives and adverbs." <u>Beye v. Bureau of Nat'l Affairs</u>,

7

59 Md. App. 642, 658 (1984). See also Silkworth v. Ryder Truck Rental, Inc., 70 Md. App. 264, 271 (1987) ("These are stringent standards and each must be pled and proved with particularity.") The Maryland Court of Appeals has held that the tort of intentional infliction of emotional distress should be used "sparingly and only for opprobrious behavior that includes truly outrageous conduct." Kentucky Fried Chicken Nat'l Management Co. v. Weathersby, 326 Md. 663, 670 (1992).

Plaintiff has not pled with sufficient particularity that the acts of delaying her from seeking medical treatment and calling her at the hospital were "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Harris v. Jones, 281 Md. at 567 (quoting RESTATEMENT (SECOND) OF TORTS, ch. 2, Emotional Distress, § 46, comment d (1965)). Plaintiff was merely advised by the nurse at MCYFD to take Tylenol and to seek medical help after her shift was over, suggesting that her medical condition was not as dire as she suggests. In addition, Plaintiff has failed to state with any particularity that her unidentified emotional distress was caused by Defendants' conduct or that it was so "'severe that no reasonable man could be expected to endure it.'" Harris, 281 Md. at 571 (quoting RESTATEMENT (SECOND) OF TORTS, ch. 2, Emotional Distress, § 46, comment j). Therefore, Plaintiff's intentional

8

infliction of emotional distress claim shall be dismissed.

In addition to the dismissal of Plaintiff's wrongful discharge and intentional infliction of emotional distress claims, the Court narrows Plaintiff's bases for her Title VII discrimination allegations. In her Complaint, she asserts that she was discriminated against in violation of Title VII in the denial of promotional opportunities, retaliatory discharge, and scheduling matters. With respect to Plaintiff's claims of scheduling difficulties and other unspecified incidents of harassing conduct, she is unable to establish a prima facie case of race, sex, or national origin discrimination.

In order to establish a Title VII disparate treatment claim, the plaintiff bears the burden of showing that she was discriminated against based on the proscribed classification. Karpel v. Inova Health Sys. Servs., 134 F.3d 1222, 1227 (4th Cir. 1998). In order to show intentional discrimination, the plaintiff can present either direct or indirect evidence. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The necessary proof to indirectly establish a claim of disparate treatment consists of three steps: (1) the plaintiff must establish a prima facie case of discrimination by a preponderance of the evidence, Halperin v. Abacus Tech. Corp., 128 F.3d 191, 196 (4th Cir. 1997); (2) the burden then shifts to the defendant who must articulate a legitimate, nondiscriminatory reason for

the adverse employment action, Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981); and (3) the burden shifts back to the plaintiff to demonstrate that the reason offered by the employer is false and that the real reason for the adverse action was unlawful discrimination, St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993), the "pretext plus requirement." Vaughan v. MetraHealth Cos., Inc., 145 F.3d 197, 202 (4th Cir. 1998).

In order to bring a claim of employment discrimination under Title VII, a plaintiff must allege a tangible adverse employment action as a result of the alleged discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 523-24. A tangible employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998). Adverse employment actions must consist of "ultimate employment decisions," such as "hiring, granting leave, discharging, promoting and compensating." Page v. Bolger, 645 F.2d 227, 233 (4th Cir.), cert. denied, 454 U.S. 892 (1981).

Plaintiff's claims concerning scheduling and other unspecified complaints are not tangible employment actions. Therefore, these actions will not be considered in later

determinations of possible Title VII violations. Plaintiff's remaining Title VII claims are denial of promotional opportunities and retaliatory discharge.

Lastly, the Court turns to Defendants' argument that Plaintiff's only cause of action, if any, should proceed against the corporate entity, MCYFD, because Plaintiff does not make any allegations as to the personal liability of Edgemeade at Focus Point, James Filipczak, Mike Schemm, Patricia Douglas, Mari Pat McGuire, or Melissa Welch. The Court agrees with Defendants that Edgemeade at Focus Point should be dismissed from this action because it is merely a trade name for MCYFD. Additionally, with respect to Filipczak and Schemm, Plaintiff has made no specific allegations of wrongdoing. Plaintiff broadly maintains that both of these individuals failed to take action to prevent the wrongful conduct of other Defendants. These allegations, alone, are insufficient to state claims; accordingly, Filipczak and Schemm shall be dismissed.

Plaintiff's Title VII claims against all Defendants except for MCYFD must be dismissed as well. The Fourth Circuit has held that individual defendants may be liable for Title VII violations only in very limited circumstances. Individuals cannot be held liable when they are alleged to have made personnel decisions of a delegable nature. These include decisions to terminate an individual's employment and to hire, discipline, or promote an

11

employee.  Lissau v. Southern Food Serv., Inc., 159 F.3d 177 (4th Cir. 1998); Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 510 (4th Cir.), cert. denied, 513 U.S. 1058 (1994).  The allegations relating to Plaintiff's Title VII claim only relate to promotion and discharge.

In contrast, defendants may be held individually liable for claims under FMLA and the Equal Pay Act.  See Knussman v. State of Maryland, 935 F.Supp. 659, 664 (D. Md. 1996).  This individual liability is permissible provided the defendant had supervisory authority over the complaining employee and was responsible at least in part for the alleged violation.  Id.  In the present case, only Defendants Patricia Douglas and Mari Pat McGuire were alleged to violate Plaintiff's right to medical leave under FMLA.  Plaintiff claims that McGuire called her at the hospital to ask questions.  This, however, does not demonstrate that McGuire denied Plaintiff medical leave or had the authority to deny such leave.  With the exception of MCYFD, Douglas, and McGuire, all other Defendants will be dismissed from Plaintiff's FMLA claim.  With respect to Plaintiff's Equal Pay Act claim, the only specific allegations regarding compensation relate to Patricia Douglas.  Accordingly, with the exception of MCYFD and Douglas, all other Defendants will be dismissed from this claim.

A telephone status conference has been scheduled for April 5, 2000, at 9:15 am, during which the parties may address, among other

issues, the strongly encouraged option of meeting with a magistrate judge for settlement discussions.

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment will be granted in part and denied in part and Plaintiff's Cross-Motion for Summary Judgment will be denied. A separate order will issue.

_____
William M. Nickerson
United States District Judge

Dated: March 20, 2000